IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DARLEEN J. MEYER, | ) | 4:04CV3326 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| SQUARE D COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Darleen J. Meyer, claims that her former employer, the defendant, Square D Company, violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634, by (1) requiring her to begin receiving pension benefits at age 70½, even though she was still employed at Square D, and (2) not increasing the amount of her pension benefits based on her continued employment past age 70½. Square D has moved for summary judgment and argues that (1) federal law required payment of pension benefits to Meyer at age 70½ and permitted such payments to be taken into account in determining the amount of benefits payable after retirement, (2) Meyer's claim is time-barred, and (3) Meyer's claim is barred by a release that she signed as part of a special severance package.

The motion will be granted with respect to the first argument, granted in part and denied in part with respect to the second argument, and denied with respect to the third argument. Essentially, the court finds that Square D's pension plan conforms to federal law, and that Meyer has failed to present evidence that Square D's method of accounting for its payment of pre-retirement pension benefits is discriminatory. The court also finds that Meyer's claim is time-barred to the extent she contends that Square D unlawfully required her to begin receiving pension benefits on April 1,

2000 (after Meyer attained age 70½), or that Square D unlawfully failed to increase the amount of her monthly payments during 2001 and 2002. As to subsequent years, however, Meyer's claim is timely. Finally, the court finds that a release executed by Meyer upon termination of her employment is ineffective in this case because it contains an exception for pension benefit claims and does not contain a specific waiver of ADEA claims. A final judgment of dismissal will be entered.

The evidence establishes that Meyer is receiving pension benefits pursuant to a plan maintained under a collective bargaining agreement between Square D and the International Brotherhood of Electrical Workers. Section 6.01 of the plan provides:

> In accordance with [Internal Revenue] Code Section 401(a)(9) and the regulations thereunder, payment of a Participant's benefits must commence by April 1 of the calendar year next following the later of the calendar year in which the Participant attains age 70-½ or the calendar year in which his retirement date occurs; . . .. Notwithstanding the foregoing: (a) the benefit commencement deadline of a participant in the Plan who attained age 70-½ on or before December 31, 1999, shall be the April 1 next following the calendar year in which he attains age 70-½ even if he is then still employed; . . ..

(Filing 18, Exhibit 2, p. 4.) This provision was necessary in order for the plan to qualify for preferred tax treatment under 26 U.S.C. § 401(a)(9) (as amended in 1996 and made applicable to taxable years beginning after December 31, 1999). Meyer attained age 70½ on December 9, 1999, and, in accordance with the plan, began receiving pension benefits of $728.50 per month on April 1, 2000. This monthly benefit amount was computed by multiplying a pension rate of $31.00 times 23.5 (representing Meyer's years of service up to April 1, 2000).

Section 5.01 of the plan establishes the pension rates that apply during each year and also provides:

> If payment of the Participant's monthly pension begins on his benefit commencement deadline date prior to his actual retirement, then:

2

> (a) the amount of any additional pension that would otherwise be accrued by the Participant after his benefit commencement deadline shall be reduced (but not below zero) by the actuarial equivalent of the pension payments made to the Participant after this date; and
>
> (b) the amount of pension payable to the Participant (after applying for the foregoing provisions of this Section 5.01) shall be adjusted, as of each subsequent January 1, to reflect the additional benefits, if any accrued by the participant during the immediately preceding calendar year.
>
> In no event shall the amount of monthly pension payable to a Participant under this Section 5.01 be less than the amount of monthly pension the Participant would have received had he retired on his Normal Retirement Date.

(Filing 18, Exhibit 2, pp. 2-3.) This provision complies with both the Internal Revenue Code and the ADEA, which provide in identical language that:

> In the case of any employee who, as of the end of any plan year under a defined benefit plan, has attained normal retirement age under such plan[,] . . . if distribution of benefits under such plan with respect to such employee has commenced as of the end of such plan year, then any requirement . . . for continued accrual of benefits under such plan with respect to such employee during such plan year shall be treated as satisfied to the extent of the actuarial equivalent of in-service distribution of benefits, . . ..

26 U.S.C.§ 411(b)(1)(H)(iii)(I); 29 U.S.C. §623(i)(3)(A).

Square D recalculated Meyer's pension benefits on January 1st of 2001, 2002, and 2003, and on her retirement date of November 1, 2003. In each instance it was determined that the increase in accrued benefits (attributable to increases both in pension rates and in years of service) was less than the actuarial equivalent of the pension benefits that Meyer had been paid during the applicable period. As a result,

and as required by Section 5.01 of the plan, Meyer continued to receive benefits of $728.50 per month. She is entitled to receive such benefits during her lifetime.

Because Meyer has not demonstrated that Square D's actuarial analysis was flawed, she cannot claim to have been discriminated against. See, e.g., Davidson v. Cincinnati Milacron, Inc., No. C-1-90-506,1991 WL 214287, at *10 (S.D. Ohio 1991) (granting summary judgment to employer), aff'd, 966 F.2d 1451 (Table), No. 91-3606, 1992 WL 133062, at *2 (6th Cir. 1992). To the contrary, it appears that Meyer has gained financially by receiving pension benefits before her retirement. For example, the unadjusted amount of Meyer's accrued monthly pension benefit as of November 1, 2003, was $1,008.25 (computed using a pension rate of $37.00 and 27.25 years of service), but as of that date she had already received benefits totaling $31,325.50. Although the actuarial equivalent of this total sum was computed to be $411.48 per month, in accordance with Section 5.01 of the pension plan, Meyer's monthly benefit amount was only reduced by $279.75, to the base level of $728.50 per month that was established on April 1, 2000. (Filing 18, Exhibit 12, p. 2.)

Square D provided Meyer with written notice of each of the pension benefit calculations on March 28, 2000, February 19, 2001, January 11, 2002, February 7, 2003, and October 15, 2003. (Filing 18, Exhibits 3, 5, 9, 10, and 12.) Meyer first filed a charge of discrimination against Square D on November 4, 2003, before both the Lincoln Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). (Filing 18, Exhibit 11.)

The charge was required to be filed with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2).[1] Insofar as Meyer claims

---

[1] The 300-day limitation period applies "[i]n the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice[.]" 29 U.S.C. §633(b).

4

that Square D violated the ADEA by commencing payment of her pension benefits on April 1, 2000, it is clear that the claim is time-barred.[2]  Similarly, it is clear that Meyer cannot now complain that there was no increase in the amount of her monthly benefit payments as of January 1, 2001, or January 1, 2002.  However, the 300-day requirement is satisfied regarding the two notices that were sent in 2003.[3]  Thus, Meyer can claim that it was unlawful for Square D not to increase the amount of her benefit payments on January 1, 2003, and again on November 1, 2003.

Square D argues that the pension benefit calculations it made in 2003 were no different from the prior calculations, and therefore Meyer's failure to file a charge with the EEOC within 300 days after receiving the February 19, 2001 notice is a complete bar to this action.  Meyer, on the other hand, argues that Square D has been in "continuing violation" of the ADEA.[4]  Neither party's argument is persuasive.

---

[2] Meyer alleges in her complaint that "[o]ther employees, not reaching the age of forced pension benefits, are treated more favorably than the Plaintiff" (Filing 1, ¶ 22), but states in her brief that she "suffered no advers [sic] employment action by being required to draw her pension."  (Filing 21, p. 9.)

[3] There are 270 days between February 7, 2003, when Meyer was notified that she was "not entitled to an increase in [her] monthly benefit at January 1, 2003" (Filing 18, Exhibit 10), and November 4, 2003, when she filed the discrimination charge with the EEOC.

[4] Meyer also argues that Square D falsely led her to believe that she would begin receiving the additional accrued benefits at retirement, in that a company representative guaranteed that Meyer would "get [her] pension, regular pension, when [she] quit, retire[d.]" (Meyer deposition, 16:22-23 (Filing 18, Exhibit 1, p. 5).)  The doctrine of equitable tolling, however, "focuses on the employee's ignorance of a claim, not on any possible misconduct by the employer, and tolls the limitations period when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim."  Henderson v. Ford Motor Co., 403 F.3d 1026, 1033 (8th Cir. 2005) (internal quotations and citations omitted).  "Stated differently, the question is, whether a reasonable person in the plaintiff's position would have been aware that her rights had been violated." Id.  Meyer has not

Even though the amount of the monthly benefit payments never changed, this was because the additional accrued benefits that resulted from Meyer's continued employment were reduced to zero on January 1st of each year after she began receiving benefit payments, and once again on her retirement date. Each of these reductions made under Section 5.01 of the pension plan was a "discrete act" of alleged discrimination. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (each discrete discriminatory act starts a new clock for filing charges alleging that act).

The evidence also shows that on August 19, 2003, in exchange for Square D's promise to pay a severance allowance of $19,958.40, Meyer signed a document in which she agreed to terminate her employment as of October 31, 2003, and to

> release and forever discharge Square D Company . . . from any and all claims, demands, rights, liabilities and causes of action, of whatsoever kind or nature, known or unknown, foreseen or unforeseen, arising under the Labor Agreement, all dated September 16, 2002, or arising out of or by reason of my employment relationship or the termination thereof, except by entitlement to a deferred pension, if I was entitled to a deferred pension on the date of my layoff as provided under the terms of the above described Pension Agreement, . . .."

(Filing 18, Exhibit 8.) Square D claims that such release bars the present action, but the exception regarding "entitlement to a deferred pension" appears applicable. More importantly, a written waiver of rights or claims arising under the ADEA is not effective unless it "specifically refers to rights or claims arising under [the ADEA]." 29 U.S.C. § 626(f)(1)(B). The document Meyer signed does not contain this specific

---

presented evidence that she exercised due diligence. She testified, in fact, that "I was always led to believe that I would get that pension, so all this stuff [in the annual benefit calculations] was irrelevant to me. . . . Nobody came to me and told me I wouldn't get it." (Meyer deposition, 24:22-25:8 (Filing 18, Exhibit 1, pp. 7-8).) In any event, Meyer's claim for increased monthly benefit payments following her retirement is not time-barred—it is simply without merit.

6

waiver. Accordingly, the action is not barred by the general release. See <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 426-427 (1998) (Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1), governs the effect under federal law of waivers or releases on ADEA claims and incorporates no exceptions or qualifications).

For the reasons stated,

IT IS ORDERED that Defendant's motion for summary judgment (filing 16) is granted in part and denied in part, and Plaintiff's action is dismissed with prejudice. Judgment shall be entered by separate document.

July 7, 2005.                    BY THE COURT:

                                 s/ *Richard G. Kopf*
                                 United States District Judge

7